1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7   OSCAR RODRIGUEZ PICAZO,                    Case No.  23-cv-02529-AMO

8                  Plaintiff,

9          v.                                  **ORDER DENYING RESPONDENTS'
                                               MOTION TO DISMISS; GRANTING
10  MERRICK GARLAND, et al.,                   IN PART PETITION FOR WRIT OF
                                               HABEAS CORPUS**
11                 Defendants.                 Re: Dkt. Nos. 1, 15

12

13         Petitioner Oscar Rodriguez Picazo is a noncitizen from Mexico who is currently in U.S.

14  Immigration and Customs Enforcement ("ICE") custody pending the conclusion of his removal

15  proceedings.  He has been in immigration detention for over 20 months without having received

16  an individualized determination of whether he poses a risk of flight or a danger to the community.

17  He brings this petition for habeas corpus, asking the Court to release him or order a bond hearing

18  at which the Government must demonstrate that further detention is warranted.

19         Respondents Merrick B. Garland, the United States Attorney General; Alejandro

20  Mayorkas, Secretary of the Department of Homeland Security; Tae Johnson, Acting Director of

21  ICE; and Moises Becerra, Field Office Director for ICE's San Francisco Field Office, oppose the

22  Petition, arguing that the Court lacks jurisdiction, and that Rodriguez Picazo is not entitled to

23  release or a bond hearing.

24         Having reviewed the arguments and records in this case, the Court **GRANTS** the Petition

25  in part.  The Government must provide Rodriguez Picazo with a constitutionally sufficient bond

26  hearing before an Immigration Judge ("IJ") on or before September 5, 2023, where the

27  Government will bear the burden of proving by clear and convincing evidence that Rodriguez

28  Picazo remains a flight risk or danger to the community.  If the IJ does not issue a decision on or

United States District Court
Northern District of California

1   before September 19, 2023, Rodriguez Picazo SHALL be released from detention.

2   **I.      BACKGROUND**

3          Rodriguez Picazo has been in federal custody since November 22, 2021, when he was

4   transferred from state custody on a 2016 drug charge to ICE custody at the Mesa Verde detention

5   facility.  Petition (ECF 1) ¶¶ 17, 32.  On May 23, 2023, Rodriguez Picazo filed a petition for a writ

6   of habeas corpus pursuant to Title 28 U.S.C. § 2241 in which he asks the Court to order his

7   immediate release or order Respondents to schedule a bail hearing where "the government must

8   prove by clear and convincing evidence" that Rodriguez Picazo poses a risk of flight or present

9   danger.  Petition ¶¶ 5-6.

10         **A.      Events Prior to Detention**

11         Rodriguez Picazo was born in Mexico on February 24, 1987, and has lived in the United

12  States for almost his entire life.  Petition ¶ 22.  His mother brought him to the United States when

13  he was about six months old to join his father, who had already moved to the country a few years

14  before and obtained lawful permanent residence status.  *Id.*  Rodriguez Picazo and his mother both

15  obtained lawful permanent resident status in 1996, when Rodriguez Picazo was nine years old.  *Id.*

16         Rodriguez Picazo began using methamphetamine in 2006, and he eventually became

17  addicted to the substance.  Petition ¶ 24.  In 2016, he was cited for possession with intent to sell.

18  *Id.*  Rodriguez Picazo did not show up for his court date for that citation, instead moving to Utah.

19  *Id.*  Rodriguez Picazo worked with an attorney to help him resolve the criminal proceedings in

20  California, and he was ultimately sentenced to serve 45 days in jail for his 2016 charge.  Petition

21  ¶ 31.

22         **B.      Petitioner's Immigration Proceedings**

23         On or around November 5, 2021, DHS placed Rodriguez Picazo in removal proceedings

24  before the San Francisco Immigration Court, charging him as removable under the Immigration

25  and Nationality Act § 237 (a)(2)(A)(iii), a civil immigration statute.  Petition ¶ 34.  On or around

26  November 22, 2021, just a few days before he finished his sentence for the 2016 charge, ICE

27  agents transferred Rodriguez Picazo to Mesa Verde.  Petition ¶ 32.  Since that day, Rodriguez

28  Picazo has remained incarcerated by Respondents at Mesa Verde.  *Id.*  Rodriguez Picazo was

United States District Court
Northern District of California

2

1   statutorily ineligible for a bond hearing in immigration court under Title 8 U.S.C. § 1226(c).  *Id.*

2       Rodriguez Picazo filed his I-589 Application for Asylum and for Withholding of Removal

3   on February 22, 2022.  Petition ¶ 35.  On June 30, 2022, the IJ denied Rodriguez Picazo's

4   application.  *Id.*  Rodriguez Picazo appealed the IJ's denial, ultimately fling a Petition for Review

5   with the Ninth Circuit on December 2, 2022.  Petition ¶ 36.  He is expected to remain detained

6   until the Petition for Review is decided.  *Id.*  If the Ninth Circuit remands his petition, as he argues

7   the law compels, he will no longer have a final order of removal and he will remain detained while

8   his proceedings once again are pending before the Board of Immigration of Appeals.  *Id.*

9       **C.    Petitioner's Requests for Release from Detention**

10      Earlier during his detention, ICE reviewed Rodriguez Picazo's custody status pursuant to

11  the district court's order in *Fraihat v. U.S. Immigr. & Customs Enf't*, 445 F. Supp. 3d 709, 750

12  (C.D. Cal. 2020), *order clarified*, No. EDCV191546JGBSHKX, 2020 WL 6541994 (C.D. Cal.

13  Oct. 7, 2020), *and rev'd and remanded*, 16 F.4th 613 (9th Cir. 2021)), which required

14  individualized assessments of detainees' COVID-19-related health risks.  ICE determined in its

15  November 5, 2021, assessment that Rodriguez Picazo would remain in custody "due to public

16  safety."  Sanchez Decl. ¶ 24 (ECF 15-1 at 4).  On November 18, 2021, the IJ conducted a custody

17  hearing at Rodriguez Picazo's request.  At the hearing, Rodriguez Picazo withdrew his bond

18  request.  Sanchez Decl. ¶ 24 (ECF 15-1 at 4).  On November 22, 2021, ICE again reviewed

19  Rodriguez Picazo's custody status pursuant to *Fraihat* and determined that he would remain in

20  custody "due to public safety."  Sanchez Decl. ¶ 25 (ECF 15-1 at 4).

21      On January 14, 2022, Rodriguez Picazo filed a request for ICE to consider his release.  On

22  January 24, 2022, ICE informed Rodriguez Picazo's counsel that he would remain in custody "due

23  to public safety."  Sanchez Decl. ¶ 26 (ECF 15-1 at 4).  On March 29, 2022, Rodriguez Picazo

24  submitted a second request for release to ICE.  On April 11, 2022, ICE informed Rodriguez Picazo

25  that he would remain in custody "due to public safety."  Sanchez Decl. ¶ 27 (ECF 15-1 at 4).

26      On June 6, 2022, Rodriguez Picazo moved the IJ to conduct a second custody hearing.

27  Sanchez Decl., Ex. A (ECF 15-2).  The second custody hearing took place on June 14, 2022, and

28  at the conclusion of the hearing, the IJ found that he lacked jurisdiction to redetermine bond

United States District Court
Northern District of California

3

1    because Rodriguez Picazo is subject to mandatory detention under Immigration and Nationality

2    Act § 236(c).  Sanchez Decl. ¶ 27 (ECF 15-1 at 4); *see also* Sanchez Decl., Ex. B (ECF 15-3).

3          On February 7, 2023, Rodriguez Picazo filed a written administrative request to ICE

4    seeking his release from custody as a matter of prosecutorial discretion.  Petition ¶ 37.  Rodriguez

5    Picazo reportedly submitted evidence of community ties and rehabilitation in support of his

6    request, including a certificate from his voluntary completion of drug and alcohol classes to

7    support his sobriety and signed declarations attesting to his rehabilitation from multiple family

8    members, including one from his wife explaining how desperately he is needed at home to help

9    provide for and take care of their family, especially their young daughter with special medical

10   needs.  *Id.*  ICE did not respond to Rodriguez Picazo's request before he filed the instant petition

11   for writ of habeas corpus.  *Id.*

12   **II.    JURISDICTION**

13         Rodriguez Picazo filed this habeas petition pursuant to Title 28 U.S.C. § 2241, which

14   allows district courts to grant writs of habeas corpus "within their respective jurisdictions."  28

15   U.S.C. § 2241(a).  Rodriguez Picazo asserts that his continued detention violates his due process

16   rights under the Fifth Amendment of the United States Constitution, naming the Director of the

17   San Francisco Field Office as one of the respondents.  Petition ¶¶ 4, 18.  Respondents argue that

18   jurisdiction and venue are proper in the Eastern District of California where Rodriguez Picazo was

19   detained at the time of filing, citing *Rumsfeld v. Padilla*, 542 U.S. 426 (2004).  Return at 6-16

20   (ECF 15 at 16-26).

21         Respondents' argument runs squarely counter to Ninth Circuit precedent that "district

22   courts retain jurisdiction under 28 U.S.C. § 2241 to consider habeas challenges to immigration

23   detention that are sufficiently independent of the merits of the removal order."  *Lopez-Marroquin*

24   *v. Barr*, 955 F.3d 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211-12 (9th Cir.

25   2011)).  Moreover, since the Director of the San Francisco Field Office is the proper respondent

26   and falls within this Court's jurisdiction, it is of little consequence where Petitioner is detained so

27   long as he remains in the Director's custody.  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187

28   (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018)

United States District Court
Northern District of California

4

(citing *Padilla*, 542 U.S. at 442-44); *see, e.g.*, *Pham v. Becerra*, No. 23-CV-01288-CRB, 2023 WL 2744397, at *4 (N.D. Cal. Mar. 31, 2023); *see also Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases in the Northern District finding jurisdiction over immigration habeas petitions filed by persons detained by the San Francisco Field Office Director within the Eastern District).

Having found it has jurisdiction to consider the Petition, the Court turns to consider its merits.

## III.    ENTITLEMENT TO A BOND HEARING

Rodriguez Picazo argues that his continued detention without a bond hearing violates his Fifth Amendment due process rights.  He contends that due process requires that the Government provide him an individualized bond hearing.  Petition ¶¶ 114-17.  In the alternative, he asks that the Court adopt a "bright-line" six-month standard and find that Rodriguez Picazo is constitutionally entitled to a bond hearing because his detention has lasted for more than six months.  *See* Petition ¶ 88.  Respondents counter that under the reasoning in *Demore v. Kim*, 538 U.S. 510 (2003), "detention under § 1226(c) is constitutional where it continues to 'serve its purported immigration purpose,' as it undoubtedly does here."  Return at 16 (ECF 15 at 26) (quoting *Demore*, 385 U.S. at 527).

The Court first considers Rodriguez Picazo's claim for relief under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See, e.g.*, *Hernandez Gomez v. Becerra*, No. 23-CV-01330-WHO, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (conducting as-applied due process analysis under *Mathews*); *Salesh P.*, 2022 WL 17082375, at *8 (same); *Perera v. Jennings*, No. 21-CV-04136- BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021) (same).

### A.    Individualized Bond Hearing

Under the three-part *Mathews* test, courts determine whether Section 1226(c), as applied, satisfies due process.  Due process requires "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (citation omitted).  Under *Mathews*, courts consider (1) the individual's private interest that will be impacted by the official action, (2) the risk of erroneous deprivation of that interest and the probable value of additional procedural

1    safeguards, and (3) the government's interest.  *Id.* at 334-35.

2              **1.     Individual's Interest**

3              The "main private interest at stake" here is Rodriguez Picazo's interest in "[f]reedom from

4    imprisonment – from government custody, detention, or other forms of physical restraint."

5    *Perera*, 2021 WL 2400981 *4 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)); *see also De*

6    *Paz Sales v. Barr*, No. 19-cv-04148-KAW, 2019 WL 4751894, at *7 (N.D. Cal. Sept. 30, 2019)

7    (finding a strong private interest where the petitioner "risks continued detention absent a bond

8    hearing").  "[L]iberty is the norm, and detention prior to trial or without trial is the carefully

9    limited exception." *Rodriguez v. Marin*, 909 F.3d 252, 256-57 (9th Cir. 2018) (quoting *United*

10   *States v. Salerno*, 481 U.S. 739, 755 (1987)).

11             Rodriguez Picazo has been detained for over 20 months without a bond hearing and there

12   is no reasonably certain end to his detention.  Rodriguez Picazo asserts that, given the status of his

13   pending appeal before the Ninth Circuit, a final decision on his removability could take several

14   more months.  Petition ¶ 88.  Respondents do not dispute this timeline, but instead assert that

15   Rodriguez Picazo's detention "has a definite termination point: the conclusion of removal

16   proceedings."  Return at 17 (ECF 15 at 27) (quoting *Jennings*, 138 S. Ct. at 846).

17             Given the uncertainty as to when those proceedings will conclude, the resulting period of

18   detention, in addition to more than 20 months that Rodriguez Picazo has already been detained,

19   weighs toward a strong private interest.  *See Perera*, 2021 WL 2400981, at *4  (finding an

20   "overwhelming" interest "regardless of the length of [petitioner's] immigration detention []

21   because 'any length of detention implicates the same' fundamental rights") (citation omitted);

22   *Jimenez v. Wolf*, No. 19-cv-07996-NC, 2020 WL 510347, at *3 (N.D. Cal. Jan. 30, 2020) (finding

23   petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable

24   imprisonment" where he had been detained for one year without a bond hearing); *Lopez Reyes v.*

25   *Bonnar*, 362 F. Supp. 3d 762, 776 (N.D. Cal. 2019) (finding a strong private interest where the

26   petitioner had been detained for 22 months and received his last bond hearing 16 months prior).

27             Respondents do not meaningfully dispute that Rodriguez Picazo has a strong interest in

28   being free from government detention.  Instead, they argue that Rodriguez Picazo' private interests

United States District Court
Northern District of California

6

United States District Court
Northern District of California

1    are diminished because he is subject to a removal order.  Return at 24 (ECF 15 at 35).  However,

2    the Supreme Court rejected an identical argument in *Zadvydas v. Davis*, 533 U.S. 678, 696 (2001).

3    The *Zadvydas* Court explained that while the "the Government argues that, whatever liberty

4    interest the aliens possess, it is 'greatly diminished' by their lack of a legal right to 'liv[e] at large

5    in this country' . . . . The choice, however, is not between imprisonment and the alien 'living at

6    large' . . . . It is between imprisonment and supervision under release conditions that may not be

7    violated."  *Id.* at 696.  This Court similarly rejects Respondents' argument here.

8         Respondents contend that, in assessing Rodriguez Picazo's private interests, the Court

9    must take into account the process he has received before the agency.  Return at 25 (ECF 15 at

10   35).  Such process included seven continuances and a briefing extension in removal proceedings;

11   four agency custody reviews; an individualized custody review hearing before an IJ to determine

12   whether he is properly subject to mandatory detention; representation by counsel at his custody

13   hearing; opportunity to appeal the IJ's custody decision to the BIA; appeal of the IJ's removal

14   decision and appeal of the BIA's decision to the Ninth Circuit, which issued a temporary stay of

15   removal.  *Id.*  But Respondents fail to explain how the process afforded to Rodriguez Picazo

16   should be considered in the analysis related to his private interests, citing no authority for such a

17   premise.  Thus, the Court concludes that the process afforded to Rodriguez Picazo, which did not

18   include an individualized bond assessment, does not weigh against Rodriguez Picazo's interest in

19   being free from government detention.

20        Respondents also contend that Rodriguez Picazo's "time in detention is principally due to

21   his own litigation choices," noting his requests for continuances and time for his attorney to

22   prepare.  Return at 25-36 (ECF 15 at 35-36).  Respondents' arguments are unpersuasive.  Even

23   assuming Rodriguez Picazo's continuances caused his continued detention, Respondents make no

24   effort to quantify the extensions.  *Id.*  Rodriguez Picazo has been detained for over 20 months,

25   some periods of which are attributable to technical and scheduling issues outside of Rodriguez

26   Picazo's control, including impacts from a global pandemic.  Petition ¶ 35.  Regardless,

27   Respondents do not contend, nor is there evidence to suggest, that Rodriguez Picazo purposefully

28   delayed the proceedings.  Indeed, "[t]he duration and frequency of [such] requests do not diminish

1    [Rodriguez Picazo's] significant liberty interest in his release or his irreparable injury of continued

2    detention without a bond hearing." *Hernandez Gomez*, 2023 WL 2802230, at *4. Rodriguez

3    Picazo's lawful pursuit of appeals does not undermine his claim.

4         In light of Rodriguez Picazo's interests in being free from detention, the Court finds that

5    the first *Mathews* factor weighs in Rodriguez Picazo's favor.

6                  **2.**     **Risk of Erroneous Deprivation of Private Interest**

7         The Court next examines the value of additional safeguards given the risk of erroneous

8    deprivation of Rodriguez Picazo's rights. *See Mathews*, 424 U.S. at 335. Respondents argue that

9    any risk of erroneous deprivation of rights is substantially mitigated "because an IJ may consider

10   only whether Petitioner was convicted of an aggravated felony under the INA, and thus [is] subject

11   to mandatory detention, which the IJ already did here." Return at 26 (ECF 15 at 36). The

12   Government misconstrues the second factor. There is no question that Rodriguez Picazo is subject

13   to mandatory detention under Section 1226(c). Nonetheless, he maintains a "strong interest in

14   only being detained if the government can adequately show he is a flight risk or threat to the

15   community." *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *9 (N.D.

16   Cal. Dec. 22, 2020); *see also Pham*, 2023 WL 2744397 at *6 n.9 (citing *Nielsen v. Preap*, 139 S.

17   Ct. 954, 972 (2019) (finding a risk of erroneous deprivation even though petitioner was subject to

18   mandatory detention as "successful due process challenges to mandatory detention would require

19   additional process" such as a bond hearing).

20        In the over 20 months that Rodriguez Picazo has been deprived of his liberty, he has never

21   had a bond hearing to evaluate the necessity of his ongoing civil detention. Neither ICE's several

22   reviews of Rodriguez Picazo's detention pursuant to *Fraihat*, 445 F. Supp. 3d at 750, nor its flat

23   denial of his requests for release assessed Rodriguez Picazo's flight risk or threat to the

24   community. The IJ, for instance, denied Rodriguez Picazo's request for release based on statutory

25   interpretation, not constitutional due process. Sanchez Decl., Ex. B (ECF 15-3). The denials of

26   Rodriguez Picazo's requests for release are not a substitute for an individualized bond hearing.

27   *See, e.g.*, *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *9 (N.D. Cal.

28   Dec. 22, 2020) (the fact that a petitioner could apply for "emergency relief due to COVID-19 in

*United States District Court*
*Northern District of California*

the form of release while habeas petitions are pending," was not "a replacement for an individualized determination by an IJ at which the government bears the burden of proof about being permitted to be out on bond generally."). In these circumstances, the value of additional procedural safeguards in the form of a bond hearing is substantial given the risk of erroneous deprivation of Rodriguez Picazo's rights. *See Rajnish*, 2020 WL 7626414, at *9 (holding that "the value added by another hearing is great" where petitioner had been held for nine months since an "unconstitutional" initial bond hearing that "assigned the risk of error to him, not to the government" and there had been "important developments" in the proceedings). Given the lack of particularized fact-finding related to Rodriguez Picazo's flight risk and/or danger to the community, this factor also weighs in favor of granting Rodriguez Picazo's request for a bond hearing.

### 3.    Government Interest

Respondents argue that there is a "legitimate government purpose" in detaining noncitizens during the pendency of their removal proceedings. Return at 19 (ECF 15 at 29) (quoting *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062-65 (9th Cir. 2008) (citation omitted)). However, the government's interest at issue here is "the ability to detain [Rodriguez Picazo] *without providing him with [a] bond hearing*, not whether the government may continue to detain him." *Lopez Reyes*, 362 F. Supp. 3d at 777 (emphasis in original); *see also Perera*, 2021 WL 2400981 at *5 (same); *Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 810 (9th Cir. 2020) (citing *Mathews*, 424 U.S. at 335) (noting that the third factor considers the "burden that the additional or substitute procedural requirement would entail," not the government's substantial interest in immigration enforcement "in general").

Respondents do not explain how providing Rodriguez Picazo with a bond hearing after more than 20 months of detention would undermine their interest in detaining individuals who are a flight risk or dangerous to the community. *See Perera*, 2021 WL 2400981 at *5 ("Requiring the government to provide Perera with a bond hearing does not meaningfully undermine the government's interest in detaining non-citizens who pose a danger to the community or are a flight risk"); *see also Diaz v. Becerra*, No. 22-CV-09126-DMR, 2023 WL 3237421, at *8 (N.D. Cal.

1   May 2, 2023) (same); *Hernandez Gomez*, 2023 WL 2802230 at *4 (same).  Accordingly, the

2   Government's interest here is minimal compared to Rodriguez Picazo's interest in being free from

3   detention.

4        Having weighed the *Mathews* factors, the Court concludes that Rodriguez Picazo's

5   continued detention without an individualized bond hearing violates his due process rights under

6   the Fifth Amendment.  Because the Court grants Rodriguez Picazo's habeas petition on this basis,

7   it need not consider whether to adopt a "bright-line" rule that individuals detained under Section

8   1226(c) are entitled to a bond hearing after six months.[1]

9        **B.    Burden of Proof**

10       The parties also dispute whether the Government bears the burden of proof should the

11  Court order a bond hearing.  Rodriguez Picazo argues that under *Singh v. Holder*, 638 F.3d 1196

12  (9th Cir. 2011), the government bears the burden of proving by clear and convincing evidence that

13  further detention is warranted.  Petition ¶ 106.  Respondents argue that *Rodriguez Diaz v. Garland*,

14  53 F.4th 1189 (9th Cir. 2022), called into question the holding of *Singh*, but that in any event,

15  *Singh* only applies to bond hearings under Section 1226(a), not 1226(c).  Return at 29-30 (ECF 15

16  at 39-40).

17       The Court agrees with Rodriguez Picazo that the Government bears the burden of proof.

18  In *Singh*, the Ninth Circuit held that "the government must prove by clear and convincing

19  evidence that an alien is a flight risk or a danger to the community to justify denial of bond,"

20  because "civil commitment for *any* purpose constitutes a significant deprivation of liberty."  638

21  F.3d at 1203-04 (emphasis in original) (citation omitted).  *Rodriguez-Diaz* considered whether a

22  second bond hearing was constitutionally required in the Section 1226(a) context, and specifically

23  declined to decide whether *Singh* remains good law in Section 1226(c) cases.  *See Rodriguez-*

24  *Diaz*, 53 F.4th at 1202 & n.4.  Thus, "[a]bsent controlling authority to the contrary, the reasoning

25

26  _____

27  [1] Courts in this district have declined to adopt a "bright-line" rule, pointing to the "dearth of guidance regarding the point at which an individual's continued mandatory detention under Section 1226(c) becomes unconstitutional."  *Bent v. Barr*, No. 19-CV-06123-DMR, 2020 WL

28  1677332, at *7 (N.D. Cal. Apr. 6, 2020) (citations omitted); *see, e.g.*, *Diaz*, 2023 WL 3237421 at *8 (same); *Hernandez Gomez*, 2023 WL 2802230, at *3 (same).

United States District Court
Northern District of California

10

United States District Court
Northern District of California

of *Singh* and its holding remain applicable to § 1226(c) cases, like this one, where there is a 'substantial liberty interest at stake.'" *Pham*, 2023 WL 2744397 at *7 (citation omitted).

The Court follows the reasoning of *Singh* and holds that the Government bears the burden of proving by clear and convincing evidence that further detention is warranted. *See, e.g.*, *Doe v. Garland*, No. 3:22-CV-03759-JD, 2023 WL 1934509, at *2 (N.D. Cal. Jan. 10, 2023) (holding that the government bears the burden in a constitutionally required bond hearing in the Section 1226(c) context post-*Rodriguez-Diaz*); *Salesh P.*, 2022 WL 17082375, at *9 ("At the hearing, the government must justify his continued detention [under § 1226(c)] by establishing by clear and convincing evidence that he is a flight risk or a danger to the community"); *see also Hernandez Gomez*, 2023 WL 2802230 at *4 (collecting cases that the government bears the burden of proof).

## CONCLUSION

The Court **GRANTS** Rodriguez Picazo's Petition in part, and **ORDERS** that the Government provide him with a constitutionally compliant bond hearing before an immigration judge on or before **September 5, 2023**. The Government shall bear the burden of proving by clear and convincing evidence that Rodriguez Picazo is a flight risk or a danger to the community. If the IJ does not issue a decision on or before **September 19, 2023**, Rodriguez Picazo **SHALL** be released from detention.

**IT IS SO ORDERED.**

Dated: August 21, 2023

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**

11